IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ANTHONY HOSS,

   Petitioner,

v.

WARDEN,

   Respondent.

Civil Action No.: PJM-22-356

## MEMORANDUM OPINION

Pending is Respondent's Motion to Dismiss or, in the alternative, for Summary Judgment. ECF No. 17. Petitioner, who is self-represented in this matter, opposes the motion. ECF No. 19. Respondent filed a Reply. ECF No. 22.

Also pending are Petitioner's Motions to take Judicial Notice (ECF Nos. 4 and 8), and for Reconsideration of the Court's Order granting Respondent an extension of time (ECF No. 15). Respondent filed a Motion for Extension of Time to file a Reply (ECF No. 20) and Petitioner filed an objection to the motion (ECF No. 21).

No hearing is required to resolve the matters pending before the Court. *See* Local Rule 105.6 (D. Md. 2021). For the reasons that follow the Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 shall be DENIED and a certificate of appealability shall be DECLINED. In addition, Petitioner's first Motion to Take Judicial notice (ECF No. 4) is DENIED, and the second motion (ECF No. 8) is GRANTED; and his Motion for Reconsideration (ECF No. 15) is DENIED.

### I.   Background

**A.   Petition Allegations**

Petitioner Anthony Hoss is a federal inmate confined to Federal Correctional Institution ("FCI") Cumberland. He filed this Petition pursuant to 28 U.S.C. § 2241, challenging the manner

in which the Federal Bureau of Prisons ("BOP") is calculating credits towards his release date. Hoss explains that on November 3, 2016, he received a 100-month sentence for violation of 18 U.S.C. § 922(g), felon in possession of a firearm. ECF No. 1 at 1. Hoss was convicted and sentenced in the United State District Court for the Western District of Texas. *Id*.

According to Hoss he has "served over 68 months" of his sentence, which does not include 15 months of good conduct credits he has earned. ECF No. 1 at 1. He was informed by his Case Manager, Mr. Booher, that he had been "put in for up to 12 months of prerelease custody." *Id*. He states that the BOP has "begun to implement the time credits ("FTC") portion of the First Step Act" for federal prisoners who are eligible to earn them. *Id*. at 1-2. Hoss explains that under Title "18 U.S.C. § 3632(d)(4)(A)(i) a prisoner is entitled to earn 10 days of FTC for every 30 days of successful evidence-based recidivism reduction programming or productive activities." *Id*. at 2.

Hoss states that he is eligible to earn FTC under the First Step Act due to his completion of and participation in certain classes such as the Non-Residential Drug Abuse Program and National Parenting courses. ECF No. 1 at 2. He adds that he worked as a Recreation Orderly beginning on December 23, 2019, when he was confined at FCI Hazelton. *Id*. Hoss asserts he kept his job assignment until he was transferred from FCI Hazelton on May 24, 2021, and, in his view, this entitles him to receive 170 days of FTC. *Id*.

Hoss also states that while incarcerated at FCI Coleman in Florida, from February of 2018 through October of 2019, he completed certain classes and served as a mentor in the Skills Program. *Id*. at 3. Hoss worked a prison job as a Recreation Orderly in May of 2019 and maintained that job until he was transferred from FCI Coleman in October of 2019. *Id*. He claims this entitles him to a conservative estimate of 40 days of FTC. *Id*.

Based on these allegations, Hoss requests this Court to award him 210 days of FTC and to order the BOP to apply those credits towards his placement in prerelease custody or supervised release. ECF No. 1 at 3. He states he requires this Court's intervention in the matter because a memorandum was recently posted to the "electronic bulletin" at FCI Cumberland indicating that the BOP will not allow prisoners to redeem FTC until they are "at a low or minimum recidivism risk level." *Id*. Additionally, Hoss notes that on January 21, 2022, he was told by Unit Team staff that the BOP had not even begun calculating FTC for prisoners at medium or high risk assessment levels. *Id*. at 3-4.

Hoss's understanding of 18 U.S.C. § 3632(a)(5)(A) is that "all prisoners of every risk level are to have a meaningful opportunity to reduce their classification" during their incarceration. ECF No. 1 at 4. Hoss also relies on 18 U.S.C. § 3624(g) to support his argument that "prisoners with medium or high-risk assessment levels" are permitted to "petition the Warden for permission to redeem earned FTC for prerelease custody or supervised release." *Id*. Hoss asserts that if his interpretation of the relevant statutory provisions is correct, he should have his earned FTC applied so that he receives additional time in prerelease custody, not withstanding the fact that he is at a high-risk assessment level. *Id*.

On January 21, 2022, Hoss sent the Warden at FCI Cumberland an electronic request to redeem his earned FTC for time in prerelease custody. ECF No. 1 at 5. The Warden told Hoss that while he could earn FTC, he could not redeem the credits until his high-risk assessment level was reduced to low or minimum risk assessment. *Id*.

Hoss expresses additional concern because he was told that the BOP has not begun calculating FTC for prisoners who, like him, are at a medium or high-risk assessment level. ECF

No. 1 at 5. He states that "I can't see how the Warden could allow me to redeem FTC that hasn't even been calculated." *Id*.

Although he has maintained a clear conduct record during his incarceration, Hoss states his risk assessment has remained high since receiving his initial PATTERN classification in December of 2019. ECF No. 1 at 5-6. According to Hoss, the PATTERN classification he received is due to circumstances beyond his control such as the COVID-19 pandemic which caused a "shutdown of many bureaucratic functions." *Id*. at 6 *see also* ECF No. 1-1 at 2. He states there is a limited time remaining before he is sent to prerelease custody which means he has "no chance of reducing [his] risk assessment level to low or minimum." ECF No. 1 at 6. Hoss asserts that this has effectively denied him any "meaningful opportunity to reduce classification during the period of incarceration granted by 18 U.S.C. [§] 3632(a)(5)(A)." *Id*. He claims that this denial of a meaningful opportunity undercuts the purpose of the First Step Act which he claims is "to benefit people like me." *Id*. He seeks an Order requiring the BOP to award him with 210 days of FTC. *Id*.

**B.     Response**

Respondent concedes that Hoss has been approved for prerelease custody to the Residential Reentry Center ("RRC") where he will be transferred on June 28, 2022. ECF No. 17-2 at 2-3, ¶ 4. Hoss's Case Manager at FCI-Cumberland, Joseph Booher, states that on December 1, 2021, Hoss attended his 180-day program review during which he was evaluated as a high-risk inmate using "the Prisoner Assessment Tool Targeting Estimated Risk and Needs (PATTERN) tool." *Id*. at 3, ¶ 5, *see also id*. at 8 (PATTERN Worksheet Summary). Hoss will be reevaluated in June of 2022. *Id*.

On January 16, 2022, Hoss received an updated Needs Assessment which showed that in order for him to reduce his high-risk level "he needs to complete courses in anger/hostility, antisocial peers, finance/poverty, substance abuse, and trauma." ECF No. 17-2 at 3, ¶ 6, *see also id*. at 10 (Needs Reassessment Worksheet Summary).  At the time Mr. Booher's declaration was written, Hoss had "participated in K2 Awareness and Family and Community Ties" and is waiting to enroll in "Resolve, a non-residential trauma treatment program for inmates." *Id*.

Respondent also provides a declaration from Misty Shaw, a paralegal assigned to the Mid-Atlantic Regional Office for the BOP. ECF No. 17-3 at 2, ¶ 1. She provides a certified record of administrative remedies Hoss has filed. *Id*. at ¶ 3.  Ms. Shaw states that Hoss has filed a total of five administrative remedies since being in the custody of BOP, only two of which concern the First Step Act. *Id*. at 4, ¶ 6.  On May 27, 2020, while Hoss was confined at FCI Hazelton, he filed a remedy regarding his custody classification level as determined by his PATTERN assessment. *Id*. at ¶ 6(a).  After his request was denied at the institutional level, Hoss appealed to the regional level on June 8, 2020, seeking to "'be rescored and to have the serious violence score removed.'" *Id*. at ¶ 6(b).  The response denying his request states in pertinent part that:

> Our review revealed your Male Custody Classification was updated on March 25, 2020.  Your Classification Score is in accordance with Program Statement 5100.08, Inmate Security Designation and Custody Classification.  You pled guilty to Terroristic Threats of Family/Household on June 3, 2016 and January 10, 2008, you plead no contest for Battery Domestic Violence.
>
> Your severity of violence is determined by your offense behavior.  This determination is made regardless of the conviction/finding of guilt and combining both seriousness and recency of prior violent incidents.  If there is more than one incident of violence, you will be scored the combination of seriousness and recency that yields the highest point score.
>
> If you feel you Presentence Report has an error, you will need to contact your Probation Officer or Sentencing Court for correction.  You Male Custody Classification form is found to be accurate.

ECF No. 17-3 at 12.  According to Ms. Shaw, and the records she has certified, Hoss did not appeal his request to the General Counsel.  *Id*. at 4, ¶ 6(c).  Ms. Shaw also notes that Hoss has never filed an administrative remedy request asking, "to have 210 days of Time Credits applied immediately to prerelease custody or supervised release."  *Id*. at 4-5, ¶ 7.  Ms. Shaw concludes that Hoss has not exhausted administrative remedies with respect to the claims raised in his Petition.  *Id*.

Respondent further states that Hoss's PATTERN score excludes the application of FTC to prerelease custody or supervised release.  ECF No. 17-1 at 5-6.  Respondent explains that although Hoss is eligible to receive FTC, he is not entitled to the application of those credits until he has a low or minimum risk level score.  *Id*. at 6.  Respondent also asserts that Hoss's PATTERN score as high-risk is correct and is not due to the COVID-19 pandemic.  *Id*.  Rather, Respondent explains that the First Step Act required the BOP to utilize a Risk and Needs Assessment System to determine the individual risk that an inmate will offend again once released and that identifies programs that address the needs for that inmate.  *Id*.  The Attorney General selected the PATTERN tool to carry out this obligation.  *Id*.  The tool identifies thirteen areas of assessment: anger/hostility, finance/poverty, antisocial peers, medical, cognitions, mental health, dyslexia, education, family/parenting, work, medical recreation/leisure/fitness, substance abuse, and trauma. *Id*. citing *The First Step Act of 2018: Risk and Needs Assessment – UPDATE January 2020,* at 23, n. 18.  Two risk scores are calculated using this tool; one for general recidivism and another for violent recidivism.  *Id*.

The scores obtained through PATTERN include factors that are subject to change such as the inmate's age, education, drug programming, incident reports, and time since last incident report.  The risk levels for general recidivism are assigned for male inmates as follows: 8 points or less is minimum risk level; 9 to 30 points is a low risk level; 31-43 points is a medium risk level

and 44 points or higher is a high risk level. ECF No. 17-4 at 3, ¶ 6 (Decl. Susie Morseman). The risk levels for violent recidivism are assigned for male inmates as follows: 6 points or lower is minimum risk level; 7 to 24 points is low risk level; 25-30 points is a medium risk level, and 31 or higher is a high-risk level. *Id*. Hoss has a general recidivism score of 53 and a violent recidivism score of 34, giving him a high-risk score for both. *Id*. at ¶ 7. Hoss's scores fall within the high risk range based in part on his past violent offenses and his extensive criminal history, both of which are "static scores" that will not change. *Id*. Ms. Morseman opines that "[e]ven if [Hoss] were to change his dynamic factors, it is unlikely that he would be able to reach a Low or Minimum risk level because his criminal history points of 32 for general will keep him as a Medium risk level." *Id*. Hoss's score means that FSA credits cannot be applied to his release date, even though he is eligible to earn the credits. *Id*. at ¶¶ 7 and 8. Ms. Morseman explains that eligible inmates are "entitled to reduce their risk level by programming" and in instances where an inmate is eligible to earn the credits but cannot have them applied, their status is noted as: "'FSA ELIGIBILITY STATUS IS: INELIGIBLE.'" *Id*. at 4, ¶ 9. Ms. Morseman acknowledges that Hoss's crime does not make him ineligible to earn FSA credits but his high-risk level precludes the BOP from applying those credits to his sentence unless or until he reaches low or minimum risk level. *Id*. at ¶ 11.

C. **Response and Reply**

Hoss takes issue with Respondent's assertion that he was "re-evaluated" at his last 180-day program review and insists that the documents presented are simply a regurgitation of the "same Risk Level Assignment done well over two years ago." ECF No. 19-1 at 2. Hoss additionally objects to Respondent's reliance on sections of the CFR cited in the Motion and insists the controlling provision is found in 18 U.S.C. § 3624(g)(1)(D)(II)(bb). *Id*. at 5. With regard to

exhaustion of administrative remedies, Hoss asserts that he was told by his Unit Team that this was "not an issue that he could grieve/file for administrative remedies" because it involved a matter of "statutory interpretation." *Id*. at 6, *see also* ECF No. 19-5 at 1 (decl. of Anthony Hoss stating BOP staff advised he should address this issue via 2241 Petition). He further asserts that had he been advised how to properly file a grievance about this matter, the "arduous process would in fact drag out longer than [his] current release [date]." ECF No. 19-1 at 6. Hoss also disagrees with Respondent's characterization of his claim that he is eligible to receive at least 210 days of credits; rather, Hoss asserts he has 210 days of credit banked and that "irrespective of whether I can redeem them or not, [Respondent] has not given those days to me." *Id*. at 8.

In the Reply to Hoss's opposition, Respondent asserts that Hoss has not demonstrated that he exhausted administrative remedies and argue that his claim that he could not have completed the process prior to his release date is inaccurate. ECF No. 22 at 1. Respondent asserts that Hoss could have exhausted administrative remedies before his anticipated prerelease custody on June 28, 2022 and his projected release from custody on June 25, 2023. *Id*. Respondent points out that Hoss received "program review risk assessments on May 5, 2021, December 1, 2021, and May 4, 2022" and was evaluated as a high-risk inmate. *Id*. After any of those risk assessments, Respondent contends that Hoss could have initiated and completed the administrative remedy process. *Id*. Respondent further points out that the PLRA does not impose this exhaustion requirement; rather, the law governing habeas corpus petitions requires it and in order to excuse the failure Hoss to demonstrate cause and prejudice. *Id*. at 2.

Respondent also points out that Hoss was granted prerelease custody under 18 U.S.C. § 3621(b) and not under the First Step Act. That provision states:

> Place of Imprisonment. – The Bureau of Prisons shall designate the place of the prisoner's imprisonment, and shall, subject to bed availability, the

prisoner's security designation, the prisoner's programmatic needs, the prisoner's mental and medical health needs, any request made by the prisoner related to faith-based needs, recommendations of the sentencing court, and other security concerns of the Bureau of Prisons, place the prisoner in a facility as close as practicable to the prisoner's primary residence, and to the extent practicable, in a facility within 500 driving miles of that residence. The Bureau shall, subject to consideration of the factors described in the preceding sentence and the prisoner's preference for staying at his or her current facility or being transferred, transfer prisoners to facilities that are closer to the prisoner's primary residence even if the prisoner is already in a facility within 500 driving miles of that residence. The Bureau may designate any available penal or correctional facility that meets minimum standards of health and habitability established by the Bureau, whether maintained by the Federal Government or otherwise and whether within or without the judicial district in which the person was convicted, that the Bureau determines to be appropriate and suitable considering:

(1) The resources of the facility contemplated;

(2) The nature and circumstances of the offense;

(3) The history and characteristics of the prisoner;

(4) Any statement by the court that imposed the sentence;

   a. Concerning the purposes for which the sentence to imprisonment was determined to be warranted; or

   b. Recommending a type of penal or correctional facility as appropriate; and

(5) Any pertinent policy statement issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28.

Applying these factors to Hoss's circumstance, his unit team recommended him for release to an RRC/halfway house for 271 to 365 days. ECF No. 22-1 at 3-4, ¶ 9, *see also id.* at 8-9. That recommendation was made on the grounds that there is a halfway house located in the area where Hoss plans to live once he is released; his offense does not disqualify him for such a placement; his plan to live with his brother has been approved for supervision; the sentencing court made no statement that precludes Hoss's placement at a halfway house; and no policy barred Hoss's release

9

to a halfway house. *Id*. at 4, ¶ 9. Hoss has an anticipated placement in the halfway house of June 28, 2022 and a projected release date of June 25, 2023. *Id*. at ¶ 11.

## II.     Non-Dispositive Motions

### A.     Motions for Judicial Notice

In Petitioner's first Motion to take Judicial Notice he asks this Court to take judicial notice that the Federal Bureau of Prisons has failed to apply credits to his sentence under the First Step Act. ECF No. 4. In his second motion, Petitioner asks this Court to take judicial notice of 28 C.F.R. Parts 523 and 541. ECF No. 8 at 1; ECF No. 8-1. Pursuant to Fed. R. Evid. 201(b), "[t]he court may judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Petitioner's first motion concerns his assertion that credits have not been applied to his sentence; a matter that is subject to reasonable dispute. Thus, Petitioner's first motion shall be denied.

Petitioner's second motion shall be granted as judicial notice is appropriate for matters, such as rules published in the C.F.R., that are not reasonably questioned.

### B.     Motions for Reconsideration and for Extension of Time

As noted, Hoss filed a Motion for Reconsideration of the Court's Order granting Respondent an extension of time. ECF No. 15. In it he claims that Respondent's motion was filed in bad faith as an effort to make moot any claim he has to additional credits against his sentence. *Id*. Hoss's motion is based solely on his conclusory and baseless accusation against the Assistant United States Attorney and it shall accordingly be denied.

Respondent filed a Motion for Extension of Time to file a Reply. ECF No. 20. The motion, which was filed on May 24, 2022, sought an extension to and including June 8, 2022. *Id*. Despite the brief amount of additional time requested, Hoss opposed this motion. ECF No. 21. Not

withstanding his opposition, this Court finds that the motion was not filed for any improper purpose and it shall be granted nunc pro tunc.

### III.   Standard of Review

Federal habeas relief is unavailable absent prior exhaustion of the claims asserted. The exhaustion requirement applies to petitions filed pursuant to 28 U.S.C. §2241. *See Francis v. Henderson*, 425 U.S. 536, 538 (1976) ("This Court has long recognized that in some circumstances considerations of comity and concerns for the orderly administration of criminal justice require a federal court to forgo the exercise of its habeas corpus power."); *see also Timms v. Johns*, 627 F. 3d 525, 531 (4th Cir. 2010) (applying exhaustion requirements to 2241 petition challenging civil commitment).

It is the responsibility of the United States Attorney General, the Department of Justice and the Federal Bureau of Prisons to compute sentences of prisoners committed to the custody of the United States or the District of Columbia and apply credit where it is due. *See* 18 U.S.C. § 3624, *see also Leavis v. White*, 898 F.2d 154 (6th Cir. 1990) (citing *United States v. Norman*, 767 F.2d 455, 457 (8th Cir.1985)); *United States v. Clayton*, 588 F.2d 1288, 1292 (9th Cir.1979); *see also United States v. Mitchell*, 845 F.2d 951, 952 (11th Cir.1988) ("[A] federal district court does not have jurisdiction to entertain a federal prisoner's petition for jail time credit until the prisoner has exhausted his administrative remedies with the Attorney General under 18 U.S.C. § 3568."). Where, as here, the claim asserted relates to the BOP's application of credits to a sentence, exhaustion requires the petitioner to seek a remedy for his claim through the administrative remedy process in place in the Bureau of Prisons facilities. *See* 28 C.F.R. 542.10 *et seq*.

The Administrative Remedy Procedure provides that if an inmate is unable to resolve his complaint informally, he may file a formal written complaint on the proper form within 20 calendar

days of the date of the occurrence on which the complaint is based. *See* 28 C.F.R. § 542.14(a). If an inmate is not satisfied with the Warden's response, he may appeal to the Regional Director within 20 calendar days of the Warden's response. *See* 28 C.F.R. § 542.15(a). If the inmate still is not satisfied, he may appeal the Regional Director's response to the Office of General Counsel, Washington, D.C., using the appropriate forms. The inmate must file this final appeal within 30 calendar days of the date the Regional Director signed the response. *See id.* An inmate is not deemed to have exhausted his administrative remedies until he has filed his complaint at all levels. *See* 28 C.F.R. § 542.15(a).

## IV.   Discussion

Hoss lays blame on BOP staff for telling him he could not address the claim raised in his petition through the administrative remedy procedure and alleges that the procedure was therefore unavailable to him. As Respondent correctly points out, however, to be eligible for habeas relief exhaustion is required and a different standard applies for excusing the failure to exhaust. Hoss's assertion that he was told he could not address his claim by filing a grievance is belied by his act of actually filing a grievance and, later, failing to pursue the claim through all levels of review. On the evidence before this Court, it is clear that Hoss failed to exhaust his claims properly and there is no basis for overlooking or excusing that failure. This failure forecloses the possibility of habeas relief and requires dismissal of the petition.

## V.   Conclusion

Having found that Hoss failed to exhaust his claims through the BOP's administrative remedies, the Petition for Writ of Habeas Corpus is DISMISSED without prejudice. A separate Order GRANTING Respondent's Motions to Dismiss or for Summary Judgment and for Extension

of Time; GRANTING Hoss's second Motion for Judicial Notice; and DENYING his first Motion for Judicial Notice and Motion for Reconsideration, follows.

 June 28, 2022   
Date

      /s/        
PETER J. MESSITTE  
UNITED STATES DISTRICT JUDGE